Good morning, may it please the Court. Michael Tanaka, Deputy Federal Public Defender, presenting on behalf of Mr. Villa. I'll try to reserve a couple minutes for rebuttal. Here, we're playing on a relatively narrow playing field. The government has conceded that Mr. Villa must be recensed, although there was some allusion in the opening brief to the conflict issue causing reversalist convictions. We're no longer pursuing that and concede that the remedy for that issue would be resentencing. Did you say you're no longer pursuing that? That's correct, Your Honor. All right. So what's really at stake is what's that remand for resentencing going to look like? Now, based on the arguments in the opening brief, it's pretty clear. The remand for resentencing would be to a new judge. It would be on open remand for all the issues. There would be some aspect of specific performance in respect to the plea bargain. Why should we go to a new judge? Because of all, well, the first reason is because that's what we argued in the opening brief, and the government, by not answering, has actually waived that issue. But on the merits. I mean, on the merits. I mean, my worry is I look at this case. I don't know why this judge couldn't do it right, and I guess I need your best case why I should send it to somebody else besides waiver. This, there are a number of factors. First is that the judge committed such serious error in first appointing Cunliffe for the, it's not on the record whether at that point she knew that Cunliffe had represented the co-defendant before. But certainly after that, shortly after that appointment, and Cunliffe, who knew he had represented the co-defendant, said, oh, well, I have a conflict, and moves to withdraw. Then after that, he signs a plea agreement that the judge was party to. Well, the judge wasn't, the court wasn't a party to the plea agreement, was it? It wasn't a party to the plea agreement, but certainly it was filed as a matter of public record. Then, and the judge was the one that granted the motion for Cunliffe to withdraw. Then, a couple months later, when it becomes clear Frenoso, the co-defendant, is going to trial, and he needs new counsel, and coincidentally or not, one week after the government submits a witness list showing Via on that list testifying against Frenoso, the judge appoints Cunliffe Frenoso on Via's former counsel to represent Frenoso. I mean, I appreciate you got the facts, but what is the case that suggests your best facts, or best, if you will, legal conclusion here? Because they're certainly remanded to a different judge as a discretionary decision in our mind. Well, it is, except, you know, if there is a breach of the plea agreement, I think If there's a breach of the plea agreement, then this Court's case law says it's automatic. All right. That's where I wanted you to go to begin. Yeah. So doesn't the question come down to are you still pursuing the breach of the plea agreement argument? That's Yes. Well, what is  Well, what exactly is a breach? What exactly is a breach? Okay. Can you just, you know, give it to us in 25 words or less? The breach is failing to abide by the specific agreement for when the government claims Via had breached. That is, that they would prove by proponents and evidence at a hearing before court that Via had been untruthful. That didn't happen. There was no hearing. There was no proceeding. The government simply stated that he had breached and put on no evidence at all. We don't know exactly what Mr. Via said that the government found not to be forthcoming. There was no opportunity at all for Mr. Via. Did you ask for a hearing on that in the district court? Not that I can tell, Your Honor. So is that, what is that, a waiver or plain error or what? Something like that, right? It's possibly plain error, but I guess my worry on that is But the, I mean, defense counsel did say when, I mean, there was no really formal declaration of a breach, but defense counsel did say, as the government counsel was outlining the facts that government counsel believed constituted Mr. Hey, we don't agree with that presentation, though. And he said, well, it doesn't seem to matter, but it did matter. But the bottom line is that the government really won't go there with why they say the remand should happen. The government goes there because after they file their motion, or they would not reduce, if you will, then there comes case law thereafter that says they shouldn't have done that. And therefore, they're of the opinion that, based on that afterwards case law, that, okay, we need to send it back. Well, that seems to me to be a tough argument that that's a breach on a plain error review. I believe that's two separate issues, Your Honor. The government did concede that the guideline was miscalculated because of the third point for acceptance. Right. Then it said that because there's going to be resentencing, it need not address any of the other issues. This Court's case law is fairly clear that the failure to address other issues, including the breach issue, which was raised explicitly under an argument had in the opening brief, is a waiver of that. So our position, based on this Court's case law, and that's cited in the reply brief, is that the government has conceded or waived all the sentencing issues, including the breach issue. On the breach, could we understand your breach argument as the government recommended a maximum sentence here, which is not what the plea agreement called for, and they did that when the agreement was still in effect because there hadn't been a hearing at that point about whether your client had breached? Yes, exactly, exactly. The sentence, trailing back to Judge Smith's original question about why we should remand a different judge, even absent of finding a breach, even at this Court's discretion, the sentence, as argued in the opening brief, is so substantial and unreasonable for a number of reasons. It's clear that this judge views this case in a way colored by a lot of things the government said that just are not true or, if true, are not proved. Most important, that he was sentenced at very close to the statutory maximum for this crime, based largely on what I can glean from the record, the government's representation, that he was a big mover and shaker just below Medina in this undoubtedly huge meth conspiracy in Guam. But none of the facts show that, other than the government's representation at sentencing. If you read the pre-sentence report, it's clear that there was a very large-scale meth operation, but it's equally clear that Mr. V's part was much more minor than just below Ms. Medina, who had run this. His participation was considerably, for only six months, in this whole ten-year period of this vast distribution of drugs. Mr. Sotelo, who no one mentions at this sentencing, was a co-partner with Ms. Medina for eight of those years, at least, and apparently was continuing to distribute meth. He got 180 months. For Mr. Villa to get 235 months on this record, based, it looks like, primarily on the government's recitation of facts, some of which were not true, suggests strongly to me that this judge has a view of this case that just does not comport with reality and that, absent some direct admonition from this court, it would be very difficult for her to change that view. She obviously views Mr. V as a very major player in this. Let me ask you another question so that we go to the biggest issue in the case, and that was the right to confer it to free counsel was violated. You didn't raise that issue in the district court, correct? That's correct, Your Honor. So here we have a situation where counsel was provided. What's your best argument that this is a violation of the right to conflict-free counsel? Best argument is- I mean, I'm boiling it down because your time's gone. It sounds like you're not pursuing this anymore, though, are you? No, we're not pursuing it in the terms of seeking to vacate his plea. That's what I thought. It does bear on the scope of a remand for resentencing because, very clearly, and this goes to Judge Smith's question, that the conflict arose when Mr. Villa, who, in order to fulfill a plea agreement, was obligated to cooperate against Mr. Fernozzo, is going to be cross-examined on that point and perhaps interviewed by Mr. Fernozzo's counsel, who is the very person who represented him at the early stages of this proceeding. All right, Your Honor. Now, on that contention, that issue, your best case, the only case is out-of-state case, Young, right? That's the only case. Young- I suspect it's because this issue just doesn't arise very often. No, no, but let me follow up my question. But Young, I think, seems to require that you, meaning your client Villa, show, demonstrate on the record, maybe in a sealed proceeding, that he disclosed confidential matter to the lawyer that could be used against him. There's nothing like that in the record, is there? We don't know what your client told Cunliffe, do we? No, we don't know what he told Cunliffe. Isn't that your burden to show that on the record? We don't know why, right, he didn't cooperate against Fernozzo. So how is that even an issue we can consider now? It really seems like something that maybe could be raised on collateral review when the record is developed. But we have no record that he even declined to testify because of this. The difference, though, is in all those cases, there's two things that distinguish this case. One, there's often a waiver in all those cases finding no conflict. And second, in most of those cases involving successive representation, there's three things, successive representation, it's retained counsel. Third, in almost all those cases, there's nothing as direct where the cooperation, the plea agreement requires one client to testify against the lawyer's second client. Those things at least raise a red flag. And whether it was Mr. Villa's obligation or not, certainly there's something that the court had an independent obligation in this case, given the court's knowledge, to at least have a hearing. Well, you know, the record shows how long did Cunliffe represent Villa? A week, something like that, more or less. And his record shows, you know, they met for an hour, that's all. And, you know, there's nothing in the record to transpire what Villa told Cunliffe during that hour. It wasn't even Cunliffe, right? It was his assistant. It wasn't even Cunliffe. Yeah, somebody in his office. That's correct. So we don't know whether any, we'll say, you know, possible, you know, possible inculpatory evidence or, you know, something that could be used against him on cross-examination was even disclosed. Don't you have to show that as part of your case? I suggest that this court should remand for a hearing on that. That should have been done at the point where the court was appointing Mr. Villa's former counsel to represent the co-defendant and require him to testify against him. I understand your argument. Okay. Any more questions? All right. Thank you very much. We'll hear from the government. Go ahead, Counselor. Thank you. Good morning to the panel. Ross Naughton for the United States. Off the bat, I want to start with an apology. As Mr. Tanaka alluded to in his answering brief, the United States failed to reach certain issues. It was my belief at the time that those issues were not necessary to be reached in order for the court to render its decision and render all the relief that was needed on this appeal. Which was the remand? The issues in particular that I'm referring to, Your Honor, are whether it should go back to the same judge or to a different judge. That's basically the principal issue, because it sounds like we're essentially in agreement on what needs to happen. Remand, full resentencing, open record. So he's argued that the judge relied on unreliable evidence in the sentencing. Don't we have to say something about that so on remand the judge knows whether the same evidence can be relied upon? I'm not clear on why you didn't respond to that. Yes, Your Honor, I do not have the best explanation for why I didn't respond to that. If I could answer that now, and I recognize that I'm venturing outside of the briefs here. That particular issue does not call for remand to a different judge. Because the allegation, I don't believe, is that the facts were inherently unprovable. That they're just ridiculous facts that no judge could take to have been proven. If that were shown, then that would be a problem. Instead, the allegation is that the process whereby those facts were adduced and proved up is insufficient. To that, I would respond, though, that, again, there was no objection. I mean, essentially, the term in plea agreement cases is a united front. As far as the judge could tell at sentencing, there is a united front between the AUSA and the defense attorney. But that gets us to plain error, right? So, okay, we're on plain error review because they didn't object. But now they said in their brief that the judge relied on unreliable evidence or unreliable facts, and you didn't respond. And so I'm just struggling with what we're supposed to do at that point. Your Honor, Mr. Tanaka cited the case law on waiver in his reply brief, and I am not sure how we can get around that. So we have to go with what he said because you waived it? If the court were to decide under – now, this is not to say, though, that we could just agree to remand to a different judge. Because we couldn't do that any more than we could agree that a judge be recused. This is something that the court need decide on its own. But do we need to tell – if we remand to the same judge, do we need to tell that judge that all that evidence can't be relied upon? I really – I mean, if you had made an argument, I'm not sure we would have agreed with that, but now we're in an awkward spot. Understood, Your Honor. I do not think that the court would need to tell the judge that it could not consider any of that evidence. Instead, I think that the question is the manner in which those facts were adduced and proved up is in dispute. So the issue would be presumably on remand, this goes back to a different judge, there's going to be a different attorney, different defense counsel. Why is that? Because – well, I'm venturing outside of the record here, but Mr. Tanaka, of course, was not the attorney below. I believe that – my understanding is he was selected for this appeal because the attorney below is – apparently now has some kind of conflict and was unable to handle this appeal. I assume that conflict would still obtain and preclude him from representing Mr. Villa on remand. That's speculation, though. But it seems to me that whether going to the same judge or to a different judge, whatever evidence is presented to the judge or not presented to the judge, at least one could object at that time pursuant to the agreement and we wouldn't have to worry about whether it goes to this judge or that judge because one would have the duty to object when that evidence was presented.  So what you're suggesting then is what we're really saying is Senate back, they get an extra level reduction, and they get a new full sentencing on everything, and then the attorneys have to beat it out at the end as to what that judge hears? Is that your position? Correct, Your Honor. And the virtue of that arrangement then is that under that arrangement, the parties are restored. Both parties are restored to the status quo ante. Both sides have their rights and are available to be fully enforced and defended just as though none of this ever happened. Does that remand need to start with a hearing on whether Villa breached? Yes, Your Honor. Well, it needs to start with such a hearing should the government persist in its position that Villa is in breach of the plea agreement. Is not in breach. Their position is he's not in breach. Correct. That is their position. And I expect that it will remain the government's position on remand that Villa did breach, and in which case we go through the hearing contemplated by the plea agreement. Well, what is your position now? And what is your response to what's in the appellant's brief and Mr. Tanaka's argument that government breached the plea agreement? And part of that is based upon this Young case, right? You know, the failure to not really your fault. I think they're blaming it on the court, right, to make this inquiry about whether or not, you know, Mr. Cunliffe had information that would unfairly be used against Mr. Villa, right, if he testified. And that's the reason he didn't testify. That's part of what's going to be gone into on this hearing on remand. Correct, Your Honor. If I could back up. We're not blaming anything on the court because it's our position that the court had no duty to inquire into this alleged conflict, given that this was a case of. Well, first of all, what's your position on whether the defendant has some kind of constitutional right, you know, maybe under the Fifth or Sixth Amendment, not to be cross-examined by his former counsel, where the counsel has obtained information, confidential information that could be used against his former client? I think that right clearly exists. As you've alluded to, Your Honor, that I think the best case illustrating that is the Young case. It's so hard, though, to bring the Young case to bear on this situation, though, so hard to the extent that I think it just does not even apply, and the reasons are these. The issue in Young was the defendant, who is claiming of his rights having been introduced, had gone to trial. Okay, so we're talking about trial rights. Villa, at this time, had no trial rights, zero, because he had given them up voluntarily and knowingly, pursuant to a plea agreement. Secondly, the defendant in Young, and so in particular, the right that he was complaining of having been burdened was his right to testify in his own defense. That wouldn't really be the right that Villa is complaining of here, the right that Villa is complaining of having been violated. It would be something like my right to have the best shot out of 5K that I could have, which is a strange right to contemplate because in no sense is a 5K ever an absolute right. I mean, it says so in the plea agreement. Everyone understands, hey, you're going for this. Well, let me back up a little bit. I'm not sure how clear the record is on that, but what's your understanding of why the government didn't call Villa to testify at the foregoes to trial? My understanding is, Your Honor, and this would be reflected in the record in, I don't have the sites in front of me, but in some of the supplemental excerpts of record. Essentially, there are two key filings that illustrate why the government did not call Villa as a witness at trial. One is essentially one over a year before Villa was sentenced, government polygraphed him, specifically polygraphed him on the question of whether Mr. Fresnosa had been living with Miss Medina in a certain time frame. Tested deceptive, government filed a motion to set sentencing as to Mr. Villa announcing all this. I'm sorry, I've gone into red. Well, I'd like to ask a question following up on this. Yeah, answer his question because I think he needs that answer, and then we've got another question over here you're going to have to answer as well. Subsequently then, so that was in September of 2011. Shortly before Mr. Villa is sentenced in October of 2012, I think maybe a month or two before, the government files its position concerning the PSR. In that position, government asserts we are not going to move for the third point for acceptance of responsibility. Now, that is, and we cite our reasons, and our reasons are essentially that he was uncooperative, and the government rattles off some of those reasons. Now, we acknowledge that that is error. That is not a legitimate reason to withhold that third point. However, Judge Tishuma, those are basically the facts on which the government decided not to call Mr. Villa as a witness at trial. But so my question is, in order to rely on those facts to depart from the plea agreement and recommend a maximum sentence, maximum guideline sentence instead of what the plea agreement called for, the plea agreement said you needed to have a hearing. And by not having a hearing and still recommending a maximum guideline sentence, do you acknowledge that the government breached? I do not, Your Honor. And at this point, I again recognize I'm venturing outside the briefs. But to answer that question, this is a plain error review, obviously, because this was not raised below. What we're talking about — When you say this, what do you mean? What wasn't raised below? The defense never raised the issue of breach in the district court. This argument is presented for the first time to this court. Correct. The reason I don't agree that it constitutes breach is essentially the second prong of plain error review, that this is clear or obvious error. The key case here is Puckett. Puckett says that that second prong of plain error review should have bite. That's the word that's used in the opinion, that it's not a given any time there's a variance from the language of the plea agreement that it's a clear or obvious error. Rather, if it's subject to reasonable dispute, it is not clear or obvious. But that sounds like you're arguing that the breach shouldn't matter. It doesn't have bite. But that's not an argument that it's not a breach, is it? No, no, no, Your Honor. Sorry. What I'm saying is that the alleged breach is not clear or obvious. And in this case, the alleged breach is the failure to hold a hearing on an issue of fact. But as Mr. Villa's counsel characterized the issue in briefs, that portion of the plea agreement speaks of, if a dispute arises as to whether the defendant is in breach, then we have this hearing. Here, I think it is reasonably disputable whether there was a dispute as to the defendant being in breach. Well, didn't they say something like, we don't know why you're saying that he stopped being honest? They raised some question about the allegation that he had breached. Your Honor, I would sum, but I would have to say just de minimis, that what Mr. Martinez, the attorney below, said specifically was something like, I don't necessarily agree that he provided incorrect information, but that's neither here nor there. Those were his words. I don't think that those are vigorous enough to constitute an objection, and moreover, he said those words later on in the sentencing hearing, when at the start of the sentencing hearing, the judge asked specifically, Mr. Martinez, are there any objections to the PSR? Now, one of the facts reflected in the PSR was that, and this is all seen in the sentencing transcript, one of the facts reflected in the PSR was the fact that Mr. Villa was not getting the third point for acceptance of responsibility because of the reasons that the government articulated in its filing with the court. We believe he's in breach, and Mr. Martinez said no, no objections. The third point wasn't the entire difference, though, between the sentence that the plea would have recommended and the maximum guideline sentence, was it? That's not the full extent of the difference, is it? No. It is — well, that was a chunk of the difference, but not the full extent. And this Puckett case that you're citing, is that in your brief? No, Your Honor. Do you have the cite for that? I do. Could I go to the table? I have it right here. Or shall I? We could. Is it United States v. Puckett? Yes, Your Honor. I believe it's Puckett v. United States, Supreme Court, 2009. Okay. Thanks. Thank you. Thank you. You're over your time. Counselor, if you want, I'd give you 30 seconds, if you have some excess that you want to say. I don't think I can say anything in 30 seconds, Your Honor. Well, I don't want five minutes. If you said a minute, I'd give it to you. I mean, I'm just letting you — I let him go over, I'm letting you have the opportunity to respond. I have nothing further to say. Okay. Thank you very much. And U.S. v. Villa is submitted. And we'll turn to Case 13-10571, the U.S. v. Agard.
judges: Tashima, Smith, Friedland